IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| CINDY F.,[1] | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 7:18cv253 |
| | ) |
| NANCY A. BERRYHILL, | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

Plaintiff Cindy F. ("Cindy") filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") finding her not disabled and therefore ineligible for disability insurance benefits ("DIB") under the Social Security Act ("Act").[2] 42 U.S.C. §§ 1381–1383f. Cindy alleges that the Administrative Law Judge ("ALJ") erred by failing to: (1) obtain a consultative examination after having granted her motion for such examination; (2) find that her spine impairment met listing 1.04; and (3) find that her urinary incontinence was a severe impairment. I conclude that the ALJ erred by failing to obtain a consultative examination. Accordingly, I **GRANT in part** Cindy's Motion for Summary Judgment (Dkt. No. 13) and **DENY** the Commissioner's Motion for Summary Judgment (Dkt. No. 15), and **REVERSE AND REMAND** this case for further administrative proceedings consistent with this opinion.

---

[1] Due to privacy concerns, I am adopting the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States that courts use only the first name and last initial of the claimant in social security opinions.

[2] This case is before me by consent of the parties pursuant to 28 U.S.C. § 636(c)(1).

**STANDARD OF REVIEW**

This court limits its review to a determination of whether substantial evidence exists to support the Commissioner's conclusion that Cindy failed to demonstrate that she was disabled under the Act.[3] Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations and alterations omitted). The final decision of the Commissioner will be affirmed where substantial evidence supports the decision. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

However, remand is appropriate if the ALJ's analysis is so deficient that it "frustrate[s] meaningful review." Mascio v. Colvin, 780 F.3d 632, 636 (4th Cir. 2015) (noting that "remand is necessary" because the court is "left to guess [at] how the ALJ arrived at his conclusions"); see also Monroe v. Colvin, 826 F.3d. 176, 189 (4th Cir. 2016) (emphasizing that the ALJ must "build an accurate and logical bridge from the evidence to his conclusion" and holding that remand was appropriate when the ALJ failed to make "specific findings" about whether the claimant's limitations would cause him to experience his claimed symptoms during work and if so, how often) (citation omitted).

---

[3] The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects his ability to perform daily activities or certain forms of work. Rather, a claimant must show that his impairments prevent him from engaging in all forms of substantial gainful employment given his age, education, and work experience. See 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

## **CLAIM HISTORY**

Cindy filed for DIB in December 2013, claiming that her disability began on January 5, 2012, due to obesity, back injury, depression, anxiety, fibromyalgia, lumbar sciatica with nerve entrapment, incontinence, knee injury, super morbid obesity, arthritis, and pitting edema in her lower legs.[4] R. 198, 212, 215. Cindy's date last insured was June 30, 2015; thus she must show that her disability began on or before this date and existed for twelve continuous months to receive DIB. R. 13, 212; 42 U.S.C. §§ 423(a)(1)(A), (c)(1)(B), (d)(1)(A); 20 C.F.R. §§ 404.101(a), 404.131(a). The state agency denied Cindy's applications at the initial and reconsideration levels of administrative review. R. 91–100, 102–114. On November 10, 2016, ALJ Geraldine H. Page held a hearing to consider Cindy's claims for DIB. R. 32–76. Cindy was represented by counsel at the hearing, which included testimony from vocational expert Mark A. Hileman.

On March 22, 2017, the ALJ entered her decision analyzing Cindy's claims under the familiar five-step process[5] and denying her claim for benefits. R. 13–27. The ALJ found that Cindy was insured at the time of the alleged disability onset and that she suffered from the severe impairments of degenerative joint disease of the left knee, degenerative disc disease of the

---

[4] Cindy was 39 years old on her date last insured, making her a younger person under the Act. R. 25, 91.

[5] The five-step process to evaluate a disability claim requires the Commissioner to ask, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his past relevant work; and if not, (5) whether he can perform other work. Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R.§ 404.1520); Heckler v. Campbell, 461 U.S. 458, 460–62 (1983). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. At the fifth step, the burden shifts to the Commissioner to establish that the claimant maintains the residual functional capacity ("RFC"), considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975). If the Commissioner finds that a claimant is disabled or not disabled at a step, the inquiry ends without proceeding to the next step of the sequential evaluation process. 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4).

lumbar spine, obesity, neuropathy, fibromyalgia, and carpal tunnel syndrome of the right hand.[6] R. 15. The ALJ found that these impairments, either individually or in combination, did not meet or medically equal a listed impairment. R. 17–19. Specifically, the ALJ considered listing 1.02 (major dysfunction of a joint due to any cause), listing 1.04 (disorders of the spine), listing 11.14 (peripheral neuropathies), and listing 1.08 (soft tissue injury). The ALJ also specifically considered Cindy's obesity in relation to the other body systems listings. R. 18. Further, the ALJ found that, regarding her mental functioning, Cindy had no limitation in understanding, remembering, or applying information, mild limitation in interacting with others, mild limitation in maintaining concentration, persistence, or pace, and no limitation in managing oneself. R. 16–17.

The ALJ concluded that Cindy retained the residual functional capacity ("RFC") to perform a limited range of sedentary work. R. 19. Specifically, the ALJ found that Cindy can lift and carry 20 pounds occasionally and 10 pounds frequently, stand and walk for no more than four hours, and sit for no more than six hours, in an eight-hour workday. Further, Cindy can occasionally push/pull with her lower extremities and her right upper extremity, climb ramps and stairs, and kneel, stoop, crouch, and balance. Cindy can frequently, but not constantly handle, feel, and finger with her right hand. Cindy should never crawl, and should avoid all exposure to hazardous machinery, working at unprotected heights, climbing ladders, ropes, or scaffolds, working on vibrating surfaces, and concentrated exposures to extreme temperatures. Id. The ALJ determined that Cindy was not capable of performing her past relevant work as a nursing assistant. R. 25. However, Cindy could perform other jobs that exist in significant numbers in the national economy, such as addressing clerk, call out operator, and stuffer. R. 26. Thus, the ALJ

---

[6] The ALJ found that all other impairments, including incontinence, kidney stones, and depressive and anxiety disorders, are non-severe, or not medically determinable. R. 16.

determined that Cindy was not disabled. Id. Cindy appealed the ALJ's decision and the Appeals Council denied her request for review on April 10, 2018. R. 1–4.

## **ANALYSIS**

Cindy alleges that the ALJ erred by failing to: (1) obtain a consultative examination after granting her motion for such examination; (2) find that her spine impairment met listing 1.04; and (3) find that her urinary incontinence was a severe impairment.

### A. Medical History

Cindy had complaints of back pain following an injury in September 2011, while she was lifting a patient at work. R. 397. An MRI in March 2012 showed L5/S1 right sided disc herniation, and Ishaq Y. Syed, M.D., recommended surgery. R. 587. In April 2012, Cindy underwent a right sided L5-S1 microdiskectomy. R. 576–78. At a follow-up appointment in July 2012, Cindy reported improvement in her buttock and leg pain, but some continued low back pain, and was encouraged to continue with physical therapy. R. 549. Dr. Syed referred Cindy to the Carolinas Pain Institute, where on examination in June and December 2012, she had 5/5 strength in her upper and lower extremities, and non-antalgic gait. R. 312, 334. She was assessed with hand pain, hand neuralgia, lumbosacral radiculopathy, and piriformis syndrome. Id. Steroid injections administered at her June 2012 visit provided improved pain relief, while a piriformis injection in December 2012 helped her pain "immensely." R. 305, 329.

On November 16, 2012, Cindy underwent a Functional Capacity Evaluation performed by Mark M. Durlak, PT, Cert. MDT. R. 531–41. Mr. Durlak found that Cindy could work at the light-medium physical demand level for a four hour day. R. 531. Mr. Durlak noted that testing showed, "an unusual combination of symptom/disability exaggeration and non organic signs which are significantly out of proportion to the medical impairment." R. 531. However, he

5

concluded that Cindy was "giving her best effort" and the results of the test were valid and could "be used for medical and vocational planning." Id. Still, the ALJ gave Mr. Durlaks's opinion "no weight" finding that the opinion "is based on a [four] hour day" and the record does not support a conclusion that Cindy cannot complete a normal workday. R. 24.

In April and November 2014, state agency doctors Donald Williams, M.D., and Eugene Noland, respectively, performed a record review and both found that Cindy was capable of a limited range of sedentary work. R. 99, 112–14. The ALJ gave this opinion evidence "great weight." R. 24.

In March 2015, Cindy's family doctor assessed her with fecal and urinary incontinence. R. 622. However, at a follow up visit in July 2015, she did not complain of, and was not assessed with, incontinence. R. 619–20.

### B. Consultative Evaluation

Cindy argues that the ALJ failed to fully develop the record when she granted Cindy's motion for a consultative evaluation during the hearing, but failed to obtain such evaluation. Cindy asserts that a consultative evaluation was necessary because the record lacks an assessment of her RFC by a treating or consultative physician. The Commissioner emphasizes that a decision to order a consultative examination is within the ALJ's discretion, and argues that the record contained information sufficient to allow the ALJ to reach her decision.

The transcript from the hearing shows the following exchange:

Counsel: I think it might be a good idea to ask for a motion for her to have a CE physical evaluation and mental evaluation to better define exactly what her limitations or potential capabilities could be, because she is limited in her medical treatment, you know. [We] do have quite a few exhibits in this file, but they're scattered in date and duration and actual depth of what they've been able to measure due to her financial constraints.

ALJ: I'll grant that request. So the record's going to remain open until December 10, 2016 for the consultative examinations and the reports, psychological and internists. . .

> [I]f the consultative examination is not complete within that time, I will extend the [] time until we can get those completed and share the reports with you.

R. 75–76. Thus, the ALJ plainly granted the request for physical and mental consultative examinations, yet, Cindy represents she was never contacted to schedule the evaluation.[7] Indeed, the ALJ's opinion makes no mention of a consultative evaluation, nor does the ALJ state that she changed her mind in ordering one. Thus, the issue is not whether the ALJ has discretion in ordering a consultative evaluation, which she certainly does; but rather, whether, once the ALJ determines a consultative evaluation is necessary and grants such request, it is error not to follow through, at least without explanation.

I recognize that the burden is on the claimant to prove that she is disabled. 20 C.F.R. § 416.945(a)(3) ("In general, [claimants] are responsible for providing the evidence we will use to make a finding about your residual functional capacity."); see also Bowen v. Yuckert, 482 U.S. 137, 146 Fn.5 (1987) ("The claimant first must bear the burden at step one of showing that he is not working, at step two that he has a medically severe impairment or combination of impairments, and at step four that the impairment prevents him from performing his past work."). However, the ALJ has the duty to develop the claimant's complete medical history, including "arranging for [] consultative examinations if necessary." 20 C.F.R. § 416.945(a)(3). Section 404.1519a instructs that an ALJ will obtain a consultative examination where she needs information beyond that already obtained from a claimant's medical sources. See also 20 C.F.R. § 404.1519a(b) ("We may purchase a consultative examination to try to resolve an inconsistency in the evidence, or when the evidence as a whole is insufficient to allow us to make a determination or decision on your claim."). Thus, I must assume that the ALJ here granted the

---

[7] The record contains a letter dated December 9, 2016 from Cindy's counsel advising the Social Security Administration that Cindy "has not received an appointment date for a psychological or physical examination." R. 281.

motion for a consultative examination for a reason – she felt that additional information was needed to fully develop the record.[8]

Further, the ALJ has a duty to explain her decision so as to permit meaningful judicial review. See Murphy v. Bowen, 810 F.2d 433, 437 (4th Cir. 1987); Mascio v. Colvin, 780 F. 3d 632, 636 (4th Cir. 2015). Here, the transcript of the hearing shows that the ALJ granted a motion for a consultative examination and agreed to the hold the record open until the consultative examination was completed. R. 76. Instead, however, the ALJ handed down her decision denying disability with neither the benefit of the consultative examination, nor an explanation of why such examination was not needed. By doing this, the ALJ left the reviewing court to wonder – what happened? Did the ALJ change her mind about needing a consultative examination, or was her order for such examination just forgotten or misplaced? I cannot conclude that the ALJ ultimately determined that the record was sufficient without a consultative examination because at the hearing the ALJ granted the motion which was based, in part, on the plaintiff's characterization of the medical records as "scattered in date and duration and actual depth." R. 75–76.

In Martin v. Berryhill, the court rejected the plaintiff's argument that the ALJ failed to adequately develop the record by not obtaining a neurological consultative evaluation, which the ALJ had ordered but was never scheduled. No. 3:16-CV-00163-RJC, 2017 WL 4364210, at *5 (W.D.N.C. Oct. 2, 2017). However, in Martin the court noted that the ALJ never found the neurological CE was necessary, and further emphasized that a different consultative exam had actually been ordered by the ALJ and performed by another doctor, to whom the ALJ gave great weight. Id. ("By ordering the CE performed by Dr. Whitaker, the ALJ fulfilled his duties to take

---

[8] There is no indication in the record that the additional information was instead obtained from another source.

reasonable steps to help develop Plaintiff's medical records."). In contrast, here, no consultative examination was performed, the ALJ conceded that the existing medical record was insufficient during the hearing, and the only Functional Capacity Evaluation in the record limited Cindy to a four-hour workday. In short, the ALJ has a duty to explain why she granted plaintiff's motion for a consultative evaluation, but one was never ordered or obtained. See Patterson v. Comm'r of Soc. Sec. Admin., 846 F.3d 656, 663 (4th Cir. 2017) (admonishing administrative decision makers to "[s]how your work" so as to reach a decision in a "well-reasoned and documented fashion"). I recognize that a consultative examination on remand may be of limited use now, as the date last insured in this case is in 2015. However, at the very least, the ALJ must provide a complete explanation regarding whether the record is complete without a consultative exam.

Because I find that remand is warranted based on the ALJ's failure to order a consultative examination, without any explanation, after granting Cindy's motion for such examination, Cindy's additional allegations of error will not be decided. See Boone v. Barnhart, 353 F.3d 203, 211 n.19 (3d Cir. 2003) (remanding on other grounds and declining to address claimant's additional arguments).

## CONCLUSION

For these reasons, Cindy's motion for summary judgment is **GRANTED in part** and the Commissioner's motion for summary judgment is **DENIED** and this case is **REMANDED** to the Commissioner for additional consideration under sentence four of 42 U.S.C. § 405(g).

Entered: May 15, 2019

*Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge